# Sullivan *v.* Louisville & Nashville Railroad Co.

*Action against Railroad Company for Breach of Contract.*

1. *Written contract; how construed.*—A written contract must be considered the sole exposition of the intention of the parties; and in the absence of anything in the contract to indicate that a term used therein was intended to have other than its primary or ordinary meaning, a special meaning can not be given to such term by proof of unexpressed intention.

2. *Construction of contract; definition of "assigns."*—A contract was made between a shipper and a railroad company, in which it was agreed that the railroad company would "transport timber, legs and lumber for the party of the first part and his assigns" at stipulated prices. In said contract it was stipulated that "the word 'assigns' above used in connection with the party of the first part is hereby limited to his legal representatives in case of death, to his successors in the timber and lumber business in case of his retirement," etc. The party

[Sullivan v. Louisville & Nashville Railroad Co.]

with whom the railroad company entered into the contract died, and under his will the contract with the railroad company and his claims against the railroad company for breaches of said contract prior to his death were bequeathed to the plaintiff in the present suit. A court of the State wherein the testator died, having full jurisdiction of his estate, and "said contract and of all his heirs at law, executors, devisees and legatees." decreed that all the contracts and rights of action should be assigned and set apart to the plaintiff in the present suit. This decree remains in full force and effect. *Held*: That the plaintiff in the present suit did not, by virtue of the will of the person who made the contract with the railroad company and the decree of the court above referred to, come within the meaning of the word "assigns" as defined in the contract sued on, and, therefore, could not maintain a suit for breaches of said contract occurring subsequent to the death of the party who made such contract with the railroad.

3. *Same; same.*—The plaintiff in such a suit can not maintain an action on the contract for its breach in charging and collecting higher rates of freight than agreed upon, upon the theory that the beneficial ownership of such contract entitled him to maintain such action; since the contract was not for the payment of money, but was for the performance of services and was not, therefore, within the statute authorizing actions to be brought in the name of the party really interested, (Code, § 28).

APPEAL from the City Court of Montgomery.

Tried before the Hon. A. D. SAYRE.

This action was brought by the appellant, Martin H. Sullivan, against the Louisville & Nashville Railroad Company. As originally instituted it was an action by the appellant, an individual, setting up that the defendant, the Louisville & Nashville Railroad Company, made a contract with him and one Daniel F. Sullivan, a partnership doing business under the name of D. F. Sullivan, to transport certain articles of trade at certain rates, and that D. F. Sullivan having died, the plaintiff as surviving partner was the sole party interested; and he claimed damages for the breach of the contract before and after the death of D. F. Sullivan.

On the former appeal in this case, it was decided by the court that the contract sued on was not made with

Martin H. Sullivan, the plaintiff in said suit, at all, but was made with D. F. Sullivan, individually. After the decision on said appeal, the plaintiff amended his complaint.

The amended complaint consisted of four counts. The first count alleged that the defendant on the 27th of February, 1880, entered into a contract with D. F. Sullivan, the fourth clause of which contract was as follows: "Fourth. The party of the second part, and its assigns, hereby contracts to transport timber, logs and lumber, for the party of the first part, and his assigns, at such times and in such quantities not less than twenty car loads, when shipped on main track, as he, or they, may require, over the said Pensacola Railroad, Selma & Gulf Railroad and Mobile & Montgomery Railway, from and to any point on any of them, at the rate of one cent per ton per mile, rating five thousand feet of lumber or timber, board measure, per car load, and thirty-five hundred feet, board measure, for logs per car load. The word 'assigns' above used in connection with the party of the first part is hereby limited to his legal representatives in case of his death; to his successors in the timber and lumber business, in case of his retirement, and to any mill that he may build or purchase, in case of his selling his interest therein. The provisions of this article (fourth) are to be embraced in contracts, to be severally and formally entered into, by each of said corporation, with the party of the first part, and guaranteed by the party of the second part."

The first count then alleged the following facts: There were no other charges for transportation of timber, etc., provided for by the said contract. This contract was based upon the following valuable consideration: D. F. Sullivan had, at and before the making of said contract, the legal title to said Pensacola Railroad, Selma & Gulf Railroad, certain lands in Pensacola, Fla., and about 250,000 acres of timber lands in Alabama adjacent to the three railroads mentioned in said fourth clause of said contract, and said D. F. Sullivan was engaged in obtaining timber, lumber and logs from said timber

lands and shipping over said Pensacola Railroad and Selma & Gulf Railroad, all of which was known to defendant, who also knew that the object of the provision in said contract above set out was to enable said D. F. Sullivan to ship said timber, etc., at the rates mentioned over the railroads mentioned in said contract. The rates of transportation of the timber, etc., for D. F. Sullivan mentioned in said contract with defendant, and which rates were about one-half the rates others shipping timber over the said railroads were required to pay defendant for similar service, constituted a valuable right and a valuable consideration in the making of said contract. D. F. Sullivan agreed in said contract to sell, and did sell, to the defendant, said Pensacola Railroad, Selma & Gulf Railroad, and certain lands in the city of Pensacola, in consideration of certain money, and in consideration of said agreement above mentioned to haul timber, etc., for him and his legal representatives in the event of his death. The defendant, in good faith, carried out said contract with said D. F. Sullivan from said 27th of February, 1880, until his death, June 14th, 1884, except that, beginning about March 1st, 1883, said defendant added to the rates mentioned thereby, which said D. F. Sullivan, under protest, paid in order that his timber might not be delayed in its shipment. The first amended count further alleges that on June 14th, 1884, D. F. Sullivan died, leaving a will which was regularly probated in the county of Escambia, State of Alabama, on November 8th, 1884, by which will the said D. F. Sullivan bequeathed to plaintiff the said timber lands and timber business, the said contract made with defendant as aforesaid, and also all moneys due by defendant to said D. F. Sullivan for payments made by said D. F. Sullivan to defendant under protest in excess of the rates mentioned in said contract; that there are no debts of said estate, and were not at the commencement of the suit; that there is no executor or administrator of the estate, and was not at the commencement of this suit; that said estate has been fully settled, and in said settlement the own-

ership of plaintiff in said contract and moneys was not changed from the status fixed by said will; that when the said contract was executed between the defendant and said D. F. Sullivan, the words "legal representatives" were used advisedly in said contract instead of the words "executors or administrators," with the intention at the time on the part of the defendant and of said D. F. Sullivan that said contract should be capable of being bequeathed by said D. F. Sullivan under his will, or being passed to heirs at law or distributees or legatees of his estate or himself after death, and capable of being enforced by the person to whom said contract should be bequeathed or passed; that by reason of the matters herein alleged plaintiff became the owner of said contract and said moneys, and became the legal representative of said D. F. Sullivan as to said contract, and became entitled as such legal representative to have said contract carried out by defendant with him, the plaintiff herein; that after the death of the said D. F. Sullivan, and after the probate of said will in Escambia County, Florida, the plaintiff continued said timber business, and, commencing on the 27th of June, 1884, and continuing until May 1st, 1893, the plaintiff shipped and the defendant transported for plaintiff, timber, lumber and logs over the said three railroads mentioned in said contract, and under the said contract, except that the defendant added to said rates mentioned in said contract, and the plaintiff paid to the defendant under protest in order to have his timber, etc., transported, the same class of charges which had been added and exacted during the life time of the said D. F. Sullivan, all of which amounted to $125,000.00, and he sued to recover all moneys illegally exacted by defendant from said D. F. Sullivan during his life time, and also to recover all moneys illegally exacted from the plaintiff since the death of said D. F. Sullivan.

The second amended count was exactly like the first, except that the allegation in the first count that said will had been probated in Alabama was omitted, and except that the second count had interlined in substance

the following additional allegations, viz: That in a court of the State of Florida, having full jurisdiction of the subject matter of the estate of said D. F. Sullivan, and of the said contract between said D. F. Sullivan and the defendant and all right thereunder, and having before it, and having properly obtained jurisdiction of, the persons of all the heirs at law, executors, devisees, legatees and all other persons interested in the estate of said D. F. Sullivan, including this plaintiff, a decree was regularly rendered on the 6th day of November, 1890, wherein and whereby certain assets of the estate of D. F. Sullivan, including said contract and all rights of action mentioned in the complaint, were assiged and set apart to the said M. H. Sullivan, plaintiff herein, and that said decision remains in full force and effect.

The third amended count was exactly like the first, except that the allegation in the first count that said will had been probated in Escambia County, Ala., was omitted, and except that said third count had interlined in substance the following additional allegations, viz.: That the executors of said will on the 8th day of November, 1884, filed in the Probate Court of Escambia County, Ala., a copy of said will, together with a certificate of the Judge of the court in Florida, where said will had been probated, that the said will had been regularly proved and established, and that letters testamentary had been issued to the executors thereon, in accordance with the laws of Florida, in which such original probate was had and such original letters were granted, and that, by the provisions of said will, said executors were exempted from giving bonds, and that thereupon, the Judge of Probate for said County of Escambia, in the State of Alabama, rendered a decree granting letters testamentary to the executors of said will of D. F. Sullivan, so far as related to assets of said estate which might be within the State of Alabama; that said decree of said Probate Court of Escambia County, Ala., remains unreversed and unappealed from, and that the matters and things sought to be recovered in this suit as assets of the estate of said D. F. Sullivan accrued to said estate within the State of Alabama.

The fourth amended count was exactly like the first, except that in the fourth count the allegations contained in the first count as to the will and probate thereof, and as to the condition of the estate of said D. F. Sullivan, are omitted, and the following allegations, in substance, are inserted in said fourth count, viz.: "That, although the legal title to said lands and railroads mentioned in said contract between defendant and said D. F. Sullivan, and the legal title to said timbered lands and timber business was in said D. F. Sullivan, yet, as a matter of fact, the said railroads, lands, timbered lands and timber business were the property of a partnership known as D. F. Sullivan, which was composed of said D. F. Sullivan and plaintiff, and that although said contract was made in the name of D. F. Sullivan, and he alone could sue thereon, yet the consideration for said contract moving to defendant was the property of said partnership known as D. F. Sullivan, and said contract, by reason thereof, became and was the property of said partnership; that D. F. Sullivan died June 14th, 1884, leaving a will which was probated in Escambia County, Fla., where said D. F. Sullivan resided, and by said will said D. F. Sullivan bequeathed to plaintiff said timber business and said contract with defendant, and also the moneys due from defendant to the said D. F. Sullivan as aforesaid for payments made by said D. F. Sullivan to defendant in excess of the rates mentioned in said contract; that subsequent to the probate of said will, and about the 24th of May, 1890, a bill of complaint was filed by the two daughters of D. F. Sullivan against the plaintiff and others, including all the heirs, devisees, legatees and executors of said D. F. Sullivan, in the circuit court of Escambia county, Fla., which had jurisdiction of the parties thereto, and of all the matters adjudicated in said cause, and that said suit proceeded to a decree in said cause by consent of all the parties to said suit, by which decree certain desig-nated property mentioned in said will, consisting of

[Sullivan v. Louisville & Nashville Railroad Co.]

certain bonds and lands, was decreed to be the property
of the children and widow of said D. F. Sullivan, and
all the residue of the property, real and personal of said
partnership and of the property, real and personal of
said partnership and of the estate of D. F. Sullivan, in-
cluding the contract above mentioned made by defend-
ant with said D. F. Sullivan, was decreed to be the
property of plaintiff, and was assigned and set apart to
him, and said decree remains in full force and effect;
and there are not now and were not at the commence-
ment of this suit any debts against said estate, nor any
executor or administrator of said estate; that said
estate has been fully settled prior to the bringing of this
suit, and in the said settlement the ownership of plain-
tiff in and to said contract and in and to the moneys
due to said D. F. Sullivan by defendant was not changed
from the status fixed by said will."

The defendant moved to strike from each count of the
amended complaint the assignments of breaches and of
claims for breach of the contract sued on, which oc-
curred subsequent to the death of D. F. Sullivan. The
court sustained each of these motions and the plaintiff
separately excepted to said action of the court. There-
upon the defendant demurred to each count of the com-
plaint, upon the ground that the plaintiff was not en-
titled to maintain the suit, because as to the breaches
of the alleged contract occurring prior to the death of
said D. F. Sullivan, a suit to recover for damges there-
for could only be maintained in a court of law in the
name of his personal representative. This demurrer
was sustained. Thereupon the plaintiff offered to
amend his complaint by making all the parties inter-
ested in the estate of D. F. Sullivan parties plaintiff
suing for the use of Martin H. Sullivan. The court de-
clined to allow this amendment, and to this ruling the
plaintiff duly excepted.

The plaintiff, not offering to amend his complaint
further, judgment was rendered in favor of the defend-
ant. The plaintiff appeals, and assigns as error the
rulings of the court upon the pleadings,

[Sullivan v. Louisville & Nashville Railroad Co.]

WATTS, TROY & CAFFEY, for appellant.—The plaintiff in this suit was the legal representative within the meaning of the definition of assigns, as used in said contract. It is a generic term and includes many species. Legal representative means not only the executor or administrator, but also any person who has succeeded to the rights of the deceased, whether by purchase, descent or operation of law.

It includes heirs.—*Emerson v. Hall,* 13 Pet. 409; *Chase v. Gowdy,* 43 N. J. Eq. 96; 18 Am. and Eng. Ency. of Law, p. 818; *Boston Marine, etc. v. Scales,* 101 Tenn. 628; *Warnecke v. Lambca,* 71 Ill. 91; *Loos v. John Hancock M. L. I. Co.,* 41 Mo. 538.

Grantee.—*Duncan v. Walker,* 2 Dall. 205; *Bradley v. Dells Lumber Co.,* 105 Wis. 246; *Davis v. Davis,* 26 Cal. 37.

Devisee.—*Bowman v. Lang,* 89 Ill. 19; *Grand Gulf, etc., v. Bryan,* 8 S. & M. (Miss.), 275; *Stooks. App.* 20 Pa. St. 349; *Davis v. Davis,* 26 Cal. 37.

Descendents.—*Staples v. Lewis,* 71 Conn. 228; *Coster v. Butler,* (Supt. Ct. Spec. T.), 63 How. (N. Y.), 311.

Children—*Griswold v. Sawyer,* 125 N. Y. 411.

Distributees.—*Holloway v. Radcliffe,* 23 Beav. 163; *Smith v. Palmer,* 7 Hare, 225; *Farnam v. Farnam,* 53 Conn. 261; *Eager v. Whitney,* 163 Mass. 463.

The meaning of "legal representatives" is not to be determined solely from the instrument itself, but in part from concomitant circumstances and the existing state of things, and the relative situation of the parties to be affected by it.—*Boykin v. Bank of Mobile,* 72 Ala. 270-1; *Meyer v. Mitchell,* 75 Ala. 478; *Delaunay v. Burnett,* 9 Ill. 494; *Warnecke v. Lambca,* 71 Ill. 91; *Bowman v. Lang,* 89 Ill. 19; *Murray v. Strang,* 20 Ill. App. 613; *Loos v. John Hancock M. L. I. Co.,* 41 Mo. 511; *Griswold v. Sawyer,* 125 N. Y. 411.

It is averred in all the counts of the amended complaint that between March 1, 1883, and June 14, 1884, D. F. Sullivan paid to appellee under protest charges for the transportation of timber in excess of the rates fixed by the written contract set forth between the parties. It

is undeniable that an action of assumpsit for money had and received lies and, notwithstanding the fact that this suit is in form for breach of the contract, it is well stated in the several counts of the complaint, for the recovery of these excess payments.—*Mobile, etc. Ry. Co. v. Steiner,* 61 Ala. 559, 595-6; *Southern Ry. Co. v. Anniston,* 135 Ala. 315, 318; Neither *Lotspeich v. Cen. &c. Co.,* 73 Ala. 306, 307, nor *Gulf City etc. Co. v. L. & N. R. R. Co.,* 121 Ala. 621, 624-5, in which the former case is cited, questions its soundness upon the point in it here relied upon.

Furthermore, both the general principles of other decisions in this state and the current of decisions on the same question in other states sustain the propositions that where money is paid under protest, as in the case at bar, upon wrongful demand of the carrier, in order to procure it to transport goods, (a) a recovery may be had, and (b) money had and received is the proper form of action.—*Glass v. Haygood,* 133 Ala. 489, 497-501; *Pauling v. Watson,* 26 Ala. 205, 213; *Ewing v. Peck,* 26 Ala. 413, 416; *Winter v. City Council,* 65 Ala. 403, 411; *Raisler v. Mayor,* 66 Ala. 194; *P. & M. Ins. Co. v. Tunstall,* 72 Ala. 142, 150; Schouler on Bailments & Carriers, (3 ed.), Sec. 538, p. 558, n. 1. and cases cited; Hutchison on Carriers, (2 ed.), Sec. 447 a. and cases cited; 2 Greenleaf on Evidence, (Lewis ed.), Sec. 121.

GUNTER & GUNTER and CHAS. P. JONES, *contra.*—The plaintiff was not an assign of D. F. Sullivan as defined by the contract itself.

But plaintiff tries to get in under "legal representatives," by saying in his complaint that the words "legal representatives" were used "advisedly" instead of "executors or administrators," with the intention that the contract should be assignable by will, or should go to distributees, and that by reason of D. F. Sullivan having willed the contract to him, and the heirs, legatees and executors consenting to this disposition, he is his "legal representative." Both at law and in equity, the general rule is that parol testimony is not admissible to

vary a written instrument.—*Hunt v. Rousmanier,* 8 Wheat. 211; *Spriggs v. Bank,* 14 Pet. 206; *Warner v. Brinton,* 29 Fed. cases, 240; *In re Dunham,* 8 Fed. cases, 38; *Gayle v. Hudson,* 10 Ala. 127; *Freed v. Brown,* 41 Ark. 500; notes to U. S. Reps., Vol. 13, p. 475.

If D. F. Sullivan had, in the most formal manner, assigned and transferred to Martin H. Sullivan his claim for damages for the violation of the contract prior to the 14th June, 1884, when he died, such assignment would not have authorized the assignee to sue thereon in his own name. The proceedings in the suit which are set up in the declaration between the executors of Daniel F. Sullivan and Martin H. Sullivan *et al.,* interested in the estate of Daniel F. Sullivan, in connection with the alleged will, could not in any event be more than an assignment by D. F. Sullivan himself in his life time. "Choses in action not negotiable are not assignable at law so as to authorize the assignee to sue in his own name."—*Dunlop v. Silver,* Fed. case No. 4169; *Tiernan v. Jackson,* 30 U. S. (5 Pet.), 580; *Johnson v. Martin,* 54 Ala. 271.

The plaintiff could not sue in his own name. It seems perfectly evident that the legal title to the choses in action arising on the breach of the contract during the life of Daniel F. Sullivan never vested, and could not vest, by the legal proceedings referred to in the complaint, in Martin H. Sullivan so as to authorize him to sue in his own name.—2 Chitty on Contracts, 1357; *Phillips v. Sellers,* 42 Ala. 658; *Enloe v. Reike,* 56 Ala. 500; *Flexner v. Dickerson,* 65 Ala. 72.

TYSON, J.—This suit was brought by appellant to recover damages for alleged breaches by defendant of a contract made by appellee with D. F. Sullivan, deceased, granting to D. F. Sullivan and his assigns preferential rates in the shipment of timber and lumber over the Pensacola Railroad, the Selma & Gulf Railroad, and the Mobile & Montgomery Railroad. The breaches assigned embrace matters occurring both before and after the death of D. F. Sullivan.

[Sullivan v. Louisville & Nashville Railroad Co.]

Plaintiff bases his right of action as owner, under the will of D. F. Sullivan of his lumber and timber business, of the contract with defendant, and of the claims of D. F. Sullivan against the defendant, for breaches of said contract prior to his death.

It is further alleged in the second and fourth counts of the complaint as amended that "a court of the State of Florida having full jurisdiction of the subject matter of the estate of said D. F. Sullivan and of the contract of February 27, 1880, and the other contract described in this complaint, and the rights thereunder, and having before it and having properly obtained jurisdiction of the persons, all the heirs at law, executors, devisees and legatees of said D. F. Sullivan, and to which said cause the said M. H. Sullivan, the plaintiff herein, was a proper party, a decree was duly and regularly rendered on to-wit, the 6th day of November, 1890, wherein and whereby certain assets of said estate which include all the contracts and rights of action, in which said estate had an interest, described in this complaint, were assigned and set apart to the said M. H. Sullivan, plaintiff herein, which said decree remains unappealed from and unreversed and in full force and effect."

The defendant moved to strike from the several counts so much thereof as related to breaches occurring subsequent to the death of D. F. Sullivan on June 14th, 1884, which motion was granted. The correctness of this ruling of the court depends upon whether plaintiff by virtue of the will of D. F. Sullivan and the decree of the court of Florida above referred to, either or both, comes within the meaning of the word "assigns" as defined in the contract sued on. The contract undertakes to define the word assigns by stating "that the word assigns used in connection with the party of the first part (Sullivan) is hereby *limited* to his legal representatives in case of his death, to his successors in the timber and lumber business in case of his retirement, and to any mill that he may build or purchase in case of his selling his interest therein."

It is averred in the complaint that the term "legal representatives" was used in the contract with the intention upon the part of the defendant and D. F. Sullivan that said contract should be capable of being bequeathed by said Sullivan under his will or being passed to his heirs at law or distributees after his death.

The written contract must be considered the sole exposition of the intention of the parties, and special meaning can not be given to terms used by proof of unexpressed intention.—*Guilmartin v. Wood*, 76 Ala. 294; *Hughes v. Wilkinson*, 35 Ala. 663.

When a writing contains a term which it is impossible for the court to construe, without the aid of evidence *aliunde*, it is proper to resort to evidence for that purpose, but when a writing is complete in itself, it is the duty of the court to construe it without the aid of extrinsic proof.—*Gunn v. Clendenin*, 68 Ala. 294. As was said upon the former appeal in this case, (128 Ala. 97), the term "legal representatives" used in the contract in limiting the meaning of the word assigns, has a well defined legal meaning, being executors or administrators. Bouv. Law Dic. 170; Woener on the Law of Administration, 906, bottom p. 990; 18 Am. & Eng. Ency. Law (2d ed.), 813; *Wason v. Colburn*, 99 Mass. 342; *Cox v. Curwen*, 118 Mass. 198; *Halsey v. Patterson*, 37 N. J. Eq. 445; *Tarrant v. Backus*, 63 Conn. 277; *Briggs v. Walker*, 171 U. S. 471; *In re Wyndham*, L. R. 1 Eq. 290; *In re Crawford*, 2 Drewey's Rep. 230; *Smith v. Barneby*, 2 Collyer, 728; *Alger v. Parrott*, 3 Eq. Cases, 328; *In re Best*, 18 Eq. Cases 686; *Price v. Strange*, Madd. & Gel. 159; *Pillow v. Hardeman*, 3 Humph. 538, 541; *Ewing v. Shannahan*, 113 Mo. 194, 195; *Matthews v. Am. Ins. Co.*, 154 N. Y. 449, 456. This primary meaning would, of course, yield to a context which clearly indicated a different meaning and for this reason the term has in many cases been given a broader or another sense. But in the absence of any thing in the contract to indicate that a term was intended to have other than its primary or ordinary meaning, it would be a pure assumption to con-

strue it in another sense. The contract here is complete, and there is nothing therein to show that any other than the primary meaning of the term "legal representatives" was intended. Cases last cited, *supra.* The plaintiff not coming within the meaning of the word "assigns," as limited in the contract, shows no right to sue thereon for matters occurring subsequent to the death of D. F. Sullivan.

Eliminating the portion of the several counts of the complaint which seek to recover for matters transpiring after the death of D. F. Sullivan, there remains a claim asserted in said counts for payments made by him, in excess of the contract rates, which devolved upon his executors.—*Hayes v. Hayes,* 45 N. J. Eq. 461.

The effect of the decree of the court of Florida was, at most, to transfer the beneficial ownership of the claim to such overcharge to plaintiff. It is contended that this beneficial ownership entitles plaintiff to maintain this suit as for money had and received. It is true that an action for money had and received will lie for money paid in excess of legal or contract rates when payment is involuntary and that such an action may be maintained by the distributees of an estate when there is no necessity for administration and when there has been a complete administration and final settlement.—*Wooten c. Steele,* 98 Ala. 252.

But this action here is on the contract. It is for damages for breach of an express contract to render services for a stipulated consideration.—*Ex parte Sullivan,* 106 Ala. 80.

It is not upon a promise implied by law to refund such overcharges. The several counts of the complaint cannot be considered as an action upon an implied promise to pay or an action for breach of a covenant under seal as the pleader may elect. It must be one or the other for all purposes, and this must be determined from the form of the complaint. The form of the complaint, as we have said, is upon the contract itself for breaches of its provisions which are therein assigned. It cannot be doubted that a plea of the statute of limitations of six years

[Jenkins *et al.* v. Jonas Schwab Co.]

would not be good to the counts as framed upon a sealed instrument and yet such plea would be good if the suit was merely for money had and received. As this express contract was not for the payment of money, but was for the performance of services, it is not within section 28 of the Code, authorizing actions in the name of the party really interested. In consequence, plaintiff was not authorized to maintain the suit in his name for said sums paid by D. F. Sullivan, and the demurrers to the several counts of the complaint were properly sustained.

This conclusion renders it unnecessary to consider the right of plaintiff to amend by making the suit in the name of all the distributees for his benefit, for the reason that the other distributees could also only have a beneficial interest in such claim and did not have a legal title thereto.

The judgment is affirmed.